## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GIUSEPPE LoPORTO,** | ) | |
| **AIS #00289453,** | ) | |
|     **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 15-00437-WS-N** |
| | ) | |
| **WALTER MYERS,** *Warden*, | ) | |
| ***Easterling Correctional Facility,*** | ) | |
|     **Respondent.** | ) | |

### REPORT AND RECOMMENDATIONS

Petitioner Giuseppe LoPorto, an Alabama prisoner proceeding *pro se*, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1). The petition has been referred to the undersigned Magistrate Judge who, under S.D. Ala. GenLR 72(a)(2)(R), is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of the petition, in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2254 Cases in the United States District Courts. *See* S.D. Ala. GenLR 72(b); (9/1/2015 electronic referral).

The Respondent, through the Office of the Attorney General of the State of Alabama, has timely filed an Answer (Doc. 10) to the petition, and LoPorto has filed various replies (Docs. 11, 12, 13, 15, 16) to the Answer. LoPorto's habeas petition is now under submission (*see* Doc. 14) and is ripe for disposition. Upon consideration, the undersigned finds that LoPorto's habeas petition (Doc. 1) is due to be **DISMISSED without prejudice in part** and **DISMISSED with prejudice in**

**part**.  The undersigned also finds that LoPorto should be **DENIED** a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal.

## I.    *Background*

On July 29, 1996, the grand jury for the Circuit Court of Baldwin County, Alabama, returned an eleven-count indictment charging LoPorto with seven counts of first-degree sexual abuse in violation of Ala. Code § 13A-6-66, three counts of first-degree sodomy in violation of Ala. Code § 13A-6-63, and one count of first-degree rape in violation of Ala. Code § 13A-6-61.  (Doc. 10-2 [1996 Indictment]).  On November 14, 1997, the grand jury returned a twenty-eight-count indictment charging LoPorto with fifteen counts of first-degree sexual abuse, twelve counts of first-degree sodomy, and one count of first-degree rape.   (Doc. 10-3 [1997 Indictment]).  All crimes were alleged to have been committed against the same victim.

The Baldwin County Circuit Court amended the 1996 indictment and adopted the 1997 indictment on the motion of the State of Alabama, and the case was set for trial beginning April 13, 1998.   LoPorto failed to appear.  In 2012, LoPorto was located in Italy and extradited to the United States.  At a March 2013 hearing concerning the procedural posture of the case, the parties agreed that the 1996 indictment could not have been amended by the 1997 indictment, and the circuit court vacated its previous order allowing the amendment, with trial to proceed on the charges in the 1996 indictment.  The 1996 indictment was later dismissed, and on May 23, 2013, the grand jury returned a six-count indictment

charging LoPorto with three counts of first-degree sexual abuse, two counts of first-degree sodomy, and one count of first-degree rape, with all crimes allegedly being committed against the same victim as the crimes charged in the 1996 and 1997 indictments (Baldwin County Circuit Court Case No. CC-2013-001462). A jury found LoPorto guilty on all charges in the 2013 indictment except for one count of first-degree sexual abuse, which the circuit court dismissed after the State presented its case. On January 16, 2014, the circuit court sentenced LoPorto to serve ten years in prison for each sexual abuse conviction, and to life imprisonment for each rape and sodomy conviction, with the sentences to be served consecutively. (Doc. 10-7 [Ala. Crim. App. 8/22/2014 Memorandum Opinion] at 1 – 4; Doc. 10-4 [2013 Indictment]).

LoPorto appealed his conviction, which the Court of Criminal Appeals affirmed in an unpublished memorandum opinion issued August 22, 2014. (Doc. 10-7). The Court of Criminal Appeals overruled LoPorto's application for rehearing on September 26, 2014 (Doc. 10-9). On November 14, 2014, the Supreme Court of Alabama denied LoPorto's petition for a writ of certiorari; both the Supreme Court and the Court of Criminal Appeals issued certificates of judgment under Alabama Rule of Appellate Procedure 41 that same day. (Docs. 10-11, 10-12).

In a separate proceeding in Baldwin County Circuit Court, LoPorto pled guilty on February 4, 2013, to one count of bail jumping related to his having fled to country to evade prosecution on the 1996 and 1997 indictments. On April 24, 2013, the circuit court sentenced LoPorto to ten years imprisonment for this offense.

(Doc. 10-13 [Case Action Summary for Baldwin County Circuit Court Case No. CC-2102-001007]).    LoPorto appealed his bail-jumping criminal judgment to the Alabama Court of Criminal Appeals, which dismissed the appeal on February 7, 2014.  (Doc. 10-14 [Ala. Crim. App. 2/7/2014 Order]).

On September 1, 2015, this Court received LoPorto's instant habeas petition (Doc. 1).[1]  In light of LoPorto's *pro se* status, the undersigned liberally construes his habeas petition.[2]  Moreover, because LoPorto's habeas petition was filed after April 24, 1996, it is subject to application of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA").  *E.g.*, *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1281 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1625 (2013).

## II.    *Analysis*

### A.    Bail Jumping Judgment

LoPorto asserts that he was "illegally prosecuted and sentenced on bail jumping indictment, in violation of bilateral treaty clause."  (Doc. 1 at 8).  The Respondent asserts that any federal habeas challenge to his bail jumping criminal

---

[1] Because LoPorto challenges a criminal judgment handed down by a state court within this judicial district, *see* 28 U.S.C. § 81(c), this Court has jurisdiction to entertain his habeas petition.  *See* 28 U.S.C. § 2241(d).

[2] *See, e.g.*, *Gunn v. Newsome*, 881 F.2d 949, 961 (11th Cir. 1989) (en banc) ("Pro se habeas petitioners do not stand in the same position as counseled petitioners. Because habeas petitioners are often unlearned in the law and unfamiliar with the complicated rules of pleading, we do not impose on them the same high standards of the legal art which we might place on the members of the legal profession. Accordingly, we have never wavered from the rule that courts should construe a habeas petition filed pro se more liberally than one drawn up by an attorney." (citations and quotations omitted)).

judgment is time-barred under AEDPA's one-year statute of limitations.  The Court need not address that contention, however.

The Court of Criminal Appeals dismissed LoPorto's appeal of his bail jumping conviction "based on the circuit court's order of December 17, 2013."  (Doc. 10-14).  However, the only document the Respondent has produced from the docket of the circuit court bail jumping case is a Case Action Summary ending at July 26, 2013.  (Doc. 10-13).  A review of the publicly available docket of LoPorto's circuit court bail jumping case (Baldwin County Circuit Court Case No. 05-CC-2012-001007) through alacourt.com (https://v2.alacourt.com/ (last visited December 12, 2016))[3] reveals that on October 4, 2013, the circuit court granted LoPorto's unopposed motion for a new trial (*see* 10/4/2013 circuit court order attached hereto; Doc. 15 at 170),[4] and on December 17, 2013, the court granted the State's motion to *nolle prosequi* the case with leave to reinstate.  (*See* 12/16/2013 motion and 12/17/2013 circuit court order attached hereto; Doc. 15 at 182).[5]  LoPorto acknowledges this procedural history in his reply.  (*See* Doc. 11 at 3; Doc. 15 at 39 – 40).

---

[3] Courts may take judicial notice of publicly filed documents, such as those in state court litigation…"  *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015).

[4] As was explained in the circuit court's order granting the motion for new trial, the motion was prompted by the district attorney's receipt of a letter from the U.S. Department of Justice explaining that LoPorto's bail jumping prosecution violated the extradition treaty between the United States and Italy.

[5] Due to an indexing issue with the circuit court's electronic filing system, a clarifying motion to *nolle prosequi* and order granting same were both filed on September 26, 2014.  (*See* 9/26/2014 motion and circuit court order attached hereto; Doc. 12 at 24).

Federal habeas relief is only available for a "person in custody pursuant to the judgment of a State court…"  28 U.S.C. § 2254(a).  Because LoPorto's bail jumping criminal judgment was vacated almost two years before he filed his present habeas petition, he is not "in custody pursuant to" that particular judgment. Accordingly, LoPorto's present habeas petition is due to be **DISMISSED without prejudice** for lack of jurisdiction to the extent it challenges his bail jumping criminal judgment. *See Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (per curiam) ("The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.' 28 U.S.C. § 2241(c)(3) (emphasis added); see also 28 U.S.C. § 2254(a). We have interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed.").

## B.    Sex Crimes Judgment

### 1.    Procedural Default

The Respondent asserts that, to the extent LoPorto's present habeas petition challenges his sex crimes convictions, LoPorto has failed to exhaust his state court remedies as to all but one claim.  Generally, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).

A § 2254 habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right

under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary. *O'Sullivan*[ *v. Boerckel*], 526 U.S. [838,] 845, 119 S. Ct. [1728,] 1732-33[ (1999)]. "Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule." *Smith*[ *v. Jones*], 256 F.3d [1135,] 1140[ (11th Cir. 2001)].

*Pruitt v. Jones*, 348 F.3d 1355, 1358–59 (11th Cir. 2003).

In both his initial brief (Doc. 10-5) and his application for rehearing (Doc. 10-8) to the Court of Criminal Appeals, LoPorto raised the following three issues:

1. The circuit court erred in denying LoPorto's motion to dismiss the 2013 indictment because his prosecution under that document violated the "rule of specialty" incorporated into the bilateral extradition treaty between the United States and Italy.

2. The circuit court erred in failing to declare a mistrial after a prosecution witness testified that LoPorto never denied the allegations against him.

3. LoPorto's convictions were not supported by sufficient evidence.

However, LoPorto's petition for a writ of certiorari to the Alabama Supreme Court abandoned the latter two issues in favor of pressing only the "rule of specialty" claim. The Respondent also asserts, correctly, that LoPorto has never filed any state court post-conviction challenges to his sex crimes convictions. (*See* Baldwin County Case No. 05-CC-2013-001462, case docket (last viewed December

12, 2016, via https://v2.alacourt.com/)).   Thus, the only habeas claim LoPorto has

subjected to one complete round of state court review is the "rule of specialty" claim.

The Respondent also asserts that LoPorto's unexhausted claims are due to be

dismissed as procedurally defaulted because he is now unable to raise them in state

court.

> AEDPA requires that a petitioner exhaust all state remedies before
> seeking relief on a federal claim. See 28 U.S.C. § 2254(b)(1)(A).
> Exhaustion requires a state petitioner to "fairly present federal claims
> to the state courts in order to give the State the opportunity to pass
> upon and correct alleged violations of its prisoners' federal rights."
> Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865
> (1995) (quotations omitted, alteration adopted). Exhaustion is a
> "serious and meaningful" requirement. Keeney v. Tamayo–Reyes, 504
> U.S. 1, 10, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992) (subsequent
> history omitted). The petitioner must have presented the claim in a
> manner that affords "the State a full and fair opportunity to address
> and resolve the claim on the merits." Id. A claim is procedurally
> defaulted for purposes of federal habeas review "if the petitioner failed
> to exhaust state remedies and the court to which the petitioner would
> be required to present [the claim] in order to meet the exhaustion
> requirement would now find the claim[ ] procedurally barred."
> Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 115 L.
> Ed. 2d 640 (1991) (subsequent history omitted).

Raleigh v. Sec'y, Fla. Dep't of Corr., 827 F.3d 938, 956–57 (11th Cir. 2016).

A proceeding under Alabama Rule of Criminal Procedure 32 is the sole

avenue for a defendant to collaterally attack an Alabama conviction or sentence.

See Ala. R. Crim. P. 32.4.   Relevant here, LoPorto was required to file a Rule 32

petition with the Baldwin County Circuit Court no later than November 14, 2015 -

"within one (1) year after the issuance of the certificate of judgment by the Court of

Criminal Appeals under Rule 41, Ala. R. App. P."  Ala. R. Crim. P. 32.2(c).  Because

he did not do so, any such challenge to his sex crimes judgment is now time-barred. The Eleventh Circuit has found Alabama Rule of Criminal Procedure 32.2(c) to be "an independent and adequate state procedural rule" which can result in procedural default of federal habeas claims. *See Kuenzel v. Comm'r, Ala. Dep't of Corr.*, 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (citing *Hurth v. Mitchem,* 400 F.3d 857, 864 (11th Cir. 2005)).

> Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *See Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 2644, 91 L. Ed. 2d 397 (1986). "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Id.*; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002). Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96, 106 S. Ct. at 2678. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id.*

*Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (one citation omitted). As to the second "narrow exception," "[t]he [*Murray v.* ]*Carrier* standard requires the habeas petitioner to show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Carrier*, 477 U.S. at 496. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable

evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. "In reviewing this evidence, courts are not bound by the usual rules of admissibility that would govern at a trial; and guilt is considered 'with reference to a reasonable doubt.' … '[A] petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " *Kuenzel*, 690 F.3d at 1315 (quoting *Schlup*, 513 U.S. at 327-28). A "petitioner's showing of innocence is not insufficient solely because the trial record contained sufficient evidence to support the jury's verdict." *Schlup*, 513 U.S. at 331. Nevertheless, "tenable actual-innocence gateway pleas are rare[,]" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), and a mere "showing that a reasonable doubt exists in the light of the new evidence" is not sufficient to satisfy *Schlup*. *Id.* at 329. *See also Kuenzel*, 690 F.3d at 1315 ("Irrefutable scientific evidence establishing innocence is not required to meet the '*Schlup* gateway' standard, but 'the *Schlup* standard is demanding and permits review only in the extraordinary case.' " (quoting *House v. Bell*, 547 U.S. 518, 126 S. Ct. 2064, 2077, 165 L. Ed. 2d 1 (2006)).

The Respondent's Answer notes both of these circumstances for excusing procedural default. By order dated December 15, 2016 (Doc. 14), the undersigned also informed LoPorto of those circumstances and gave him until February 1, 2017,

to show cause "cause why his habeas petition should not be dismissed for the reasons stated in the Answer[,]" particularly "why most of his claims should not be dismissed as procedurally defaulted." Despite being given ample opportunity to do so, nowhere in LoPorto's extensive briefing does he attempt to satisfy either of these two narrow circumstances.

As to "cause and prejudice," he has failed to demonstrate "cause" for the procedural default by identifying any "objective factor external to the defense [that] impeded [his] effort to raise the [defaulted ]claim[s] properly in the state court." *Henderson*, 353 F.3d at 892 (quotation omitted). As to "actual innocence," though LoPorto has filed copious exhibits with the Court, many of which are simply records from his extradition and Baldwin County criminal proceedings supplemented by LoPorto's commentary, none of it constitutes evidence that satisfies the *Schlup* "actual innocence" standard.

A defendant's mere self-serving protestations of innocence and disagreements with the veracity or reliability of the evidence is insufficient, as reasonable jurors would be free to disbelieve them. *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) ("Oyd McCray's affidavit and testimony that he was not on Bessemore Street at the time of the murder adds little in the way of quality to his actual-innocence claim. A reasonable juror surely could discount his own testimony in support of his own cause. *See Riggins v. Norris*, 238 F.3d 954, 955 (8th Cir. 2001) (noting that court is 'certainly entitled to disbelieve [defendant's] self-serving testimony'); *Cuppett v. Duckworth*, 8 F.3d 1132, 1139 (7th Cir. 1993) ('[W]e have repeatedly held

that self-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions.').").    LoPorto has also presented other exhibits to support his insinuations that his ex-wife, the mother of the victim, orchestrated the sex crime accusations against him using her professional and political connections as part of a scheme to gain control of LoPorto's assets.  At most, this is impeachment evidence that "might have strengthened [LoPorto]'s defense if presented at trial" but is not "of the powerful kind that would individually or collectively 'show that it is *more likely than not* that *no reasonable juror* would have convicted him in the light of the new evidence.'"  *Kuenzel*, 690 F.3d at 1318 (quoting *Schlup*, 115 S. Ct. at 867).

Accordingly, the undersigned finds that all of LoPorto's habeas claims attacking his sex crimes criminal judgment are due to be **DISMISSED with prejudice** as procedurally defaulted, with the exception of his "rule of specialty" claim, which the undersigned will now address on the merits.

## 2.    <u>**"Rule of Specialty" Claim**</u>

"The rule of specialty applies only to extraditions pursuant to treaty" and was "conceived in" *United States v. Rauscher*, 119 U.S. 407, 7 S. Ct. 234, 30 L. Ed. 425 (1886).  *United States v. Valencia-Trujillo*, 573 F.3d 1171, 1179 (11th Cir. 2009). "Under the rule of specialty 'the requesting state, which secures the surrender of a person, can prosecute that person only for the offense for which he or she was surrendered by the requested state or else must allow that person an opportunity to leave ....'"  *United States v. Isaac Marquez*, 594 F.3d 855, 858 n.1 (11th Cir. 2010)

(quoting *United States v. Herbage*, 850 F.2d 1463, 1465 (11th Cir. 1988) (internal quotation marks and citation omitted)).

"Under AEDPA, if a petitioner's claims have been 'adjudicated on the merits in State court,' a federal court cannot grant habeas relief unless the state court's adjudication of the claims (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Hittson v. GDCP Warden*, 759 F.3d 1210, 1230 (11th Cir. 2014) (quoting 28 U.S.C. § 2254(d)), *cert. denied*, 135 S. Ct. 2126 (2015). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires a state prisoner to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement. If this standard is difficult to meet—and it is—that is because it was meant to be. [Federal courts] will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (internal citations and quotations omitted). *See also Woods v. Donald*, 135 S. Ct. 1372, 1376  (2015) (per curiam) ("AEDPA's standard is intentionally ' " ' difficult to meet. ' " ' " (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (quoting *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786, 185 L. Ed. 2d 988 (2013)))).  The United States Supreme Court has

explained that " 'clearly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *White*, 572 U.S., at ——, 134 S. Ct., at 1702 (some internal quotation marks omitted). "And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.*, at ——, 134 S. Ct., at 1702 (same).   To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a "presumption that state courts know and follow the law." *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (*per curiam*). When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.   Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."   *Harrington, supra,* at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376.

Finally, "AEDPA instructs that, when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Burt v. Titlow,* ——U.S. ——, 134 S. Ct. 10, 15, 187 L. Ed. 2d 348 (2013) (quoting 28 U.S.C. § 2254(d)(2)). In such cases, "[t]he prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.' " *Id.* (quoting 28 U.S.C. § 2254(e)(1)). Like the "unreasonable application" standard in § 2254(d)(1), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L. Ed. 2d 738 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question ... that does not suffice to

supersede the [state] court's determination." *Id.* (alterations and quotation marks omitted).

*Hittson*, 759 F.3d at 1230.

"As a rule, [federal courts] review 'the highest state court decision reaching the merits of a habeas petitioner's claim.'" *Holland v. Florida*, 775 F.3d 1294, 1308 (11th Cir. 2014) (quoting *Hittson*, 759 F.3d at 1231), *cert. denied*, 136 S. Ct. 536 (2015). Here, that decision is the Alabama Court of Criminal Appeals's August 22, 2014 memorandum opinion affirming LoPorto's criminal judgment on direct review,[6] which addressed his "rule of specialty" claim as follows:

---

[6]  "The deferential standard of section 2254(d) applies regardless of whether the state court decision 'is unaccompanied by an opinion explaining the reasons relief has been denied. When the last adjudication on the merits provides a reasoned opinion, federal courts evaluate the opinion. 28 U.S.C. 2254(d); *see, e.g.*, *Porter v. McCollum*, 558 U.S. 30, 42–44, 130 S. Ct. 447, 175 L.Ed.2d 398 (2009). When the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in" *Harrington v. Richter*, 562 U.S. 86 (2011). *Wilson v. Warden, Georgia Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc). *See also Hittson v. GDCP Warden*, 759 F.3d 1210, 1232 (11th Cir. 2014) ("[T]here is no AEDPA requirement that a state court explain its reasons for rejecting a claim; 'Section 2254(d) applies even where there has been a summary denial." *Cullen v. Pinholster*, ––– U.S. ––––, 131 S. Ct. 1388, 1402, 179 L. Ed. 2d 557 (2011). 'When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at ––––, 131 S. Ct. at 784–85.").

Certiorari review by the Alabama Supreme Court "is not a matter of right, but of judicial discretion." Ala. R. App. P. 39(a). *See also Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Alabama court rules provide for discretionary review in the Supreme Court of Alabama of decisions by the Alabama Court of Criminal Appeals." (citing Ala. R. App. P. 39(c)). While a petition's "probability of merit" is part of the determination as to whether a writ of certiorari should issue, an affirmative finding as to this issue does not mandate the petition be granted. *See* Ala. R. App. P. 39(a) ("A petition for a writ of certiorari will be granted only when there are special and important reasons for the issuance of the writ.") & (f) ("If the Supreme Court, upon preliminary consideration, concludes that there is a

probability of merit in the petition **and** that the writ should issue, the Court shall so order…" (emphasis added)).   Thus, the Alabama Supreme Court's summary denial of certiorari review cannot be presumed "an adjudication on the merits." *Cf. Hittson*, 759 F.3d at 1231-32 ("Georgia habeas petitioners are required to obtain a certificate of probable cause from the Georgia Supreme Court before appealing a superior court decision denying relief.  The standard for granting a CPC is set forth in Rule 36 of the Georgia Supreme Court Rules, which provides that '[a] certificate of probable cause to appeal a final judgment in a habeas corpus case involving a criminal conviction will be issued where there is arguable merit.' Ga. Sup.Ct. R. 36 (emphasis added) … [I]n denying Hittson's CPC applications to appeal the denial of his first and second habeas petitions, the [Georgia ]Supreme Court was not exercising discretionary review akin a denial of a petition for certiorari review. Instead, the court was required to grant a CPC if it found arguable merit to any of the arguments in the application. In concluding that Hittson's claims lacked arguable merit, the Supreme Court had the benefit of the record from prior proceedings, the transcripts of the hearings held on his habeas petitions, and briefing on the merits of his constitutional claims. Such a standard clearly constitutes an adjudication on the merits for AEDPA purposes." (footnotes and some citations omitted)); *Wilson*, 834 F.3d at 1234 ("The courts of last resort in many other states provide a discretionary appeals process similar to certiorari review. For example, in granting or denying a writ, the Louisiana Supreme Court exercises its 'sound judicial discretion' and considers a number of nonexhaustive factors including whether the appeal presents 'a significant issue of law which has not been … resolved,' the decision of the court of appeal 'will cause material injustice or significantly affect the public interest,' or 'the controlling precedents should be overruled or substantially modified." La. Sup. Ct. R. 10(a). The rules in Illinois and Pennsylvania also provide for review in the 'sound judicial discretion' of the court, Ill. Sup. Ct. R. 315(a); Pa. R. App. P. 1114(a), and the rules in Massachusetts provide for review when it is in 'the public interest' or 'the interests of justice,' Mass. R. App. P. 27.1(e). These courts decide whether to review an appeal based, at least in part, on considerations other than the merits of the appeal. Unlike the Georgia Supreme Court, these state supreme courts may deny an application to appeal a denial of collateral relief without determining that the appeal lacks merit and, as a result, these denials are not adjudications on the merits.").

Similarly, the summary overruling of an application for rehearing by the Court of Criminal Appeals cannot be considered an adjudication on the merits, as rehearing is also generally a discretionary decision for Alabama appellate courts that does not appear to turn solely on a determination of the merits of an application's claims.  *See* Ala. R. App. P. 40; *Saylor v. State*, 278 Ala. 297, 297 (1965); *Elliott v. State*, 768 So. 2d 422, 423-24 (Ala. Crim. App. 1999) ("Where a rehearing is not a matter of right, the petition or application amounts to merely a friendly suggestion to the court informing it of its oversight or errors.  The courts of this state have never explicitly held that a rehearing is a matter of right. However,

G.L. argues that the rule of specialty required a dismissal of the 2013 indictment because he was extradited on the 1997 indictment and, he says, he could only be tried on that indictment. The standard of review on such a legal question is de novo. <u>Ex parte Morrow</u>, 915 So. 2d 539, 541 (Ala. 2004).

…

The federal courts have considered this issue and have rejected the argument G.L. raises.

> "As noted by various courts of appeals, 'specialty is a doctrine based on international comity. Because the surrender of the defendant requires the cooperation of the surrendering state, preservation of the institution of extradition requires that the petitioning state live up to whatever promises it made in order to obtain extradition.'

> "…

> "Gallo was prosecuted only for the crimes for which Colombia granted extradition; there was no specialty violation. <u>Rather than mandating exact uniformity between the charges set forth in the extradition request and the actual indictment</u>, '[w]hat the doctrine of specialty requires is that the prosecution be "<u>based on the same facts</u> as those set forth in the request for extradition."' The district court tried Gallo on the facts included in the request for extradition, and gave the jury instructions in accordance therewith."

<u>Gallo-Chamorro v. United States</u>, 233 F.3d 1298, 1305 (11th Cir. 2000) (footnotes omitted, emphasis added). See also <u>United States v. Herbage</u>, 850 F.2d [1463,] 1467[ (11th Cir. 1988)].

---

our courts have consistently treated a rehearing as a matter within the discretion of the court to which the application is addressed." (citation and quotation marks omitted)). Thus, the undersigned reviews the Court of Criminal Appeals's unpublished memorandum affirming LoPorto's criminal judgment as the "the last adjudication on the merits." The Respondent has given the undersigned no reason to find otherwise; indeed, the Respondent relies on the reasoning of that memorandum opinion in arguing the merits of LoPorto's "rule of specialty" claim.

G.L. was tried on the same facts and for the same substantive crimes with which he was charged in the 1996 and 1997 indictments – first-degree sexual abuse, first-degree sodomy, and first-degree rape. All of the charges relate to G.L.'s abuse of K.L. Therefore, the circuit court had proper jurisdiction of this case, and it did not err when it denied G.L.'s motion to dismiss.

(Doc. 10-7 at 4 – 5).

The Alabama Court of Criminal Appeals's adjudication of LoPorto's "rule of specialty" claim was not contrary to, nor did it involve an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In adjudicating the claim, the Court of Criminal Appeals relied on the reasoning of the Eleventh Circuit Court of Appeals in *Gallo-Chamorro* that the "rule of specialty" does not require "exact uniformity exact uniformity between the charges set forth in the extradition request and the actual indictment." LoPorto has not cited, nor has the undersigned located, any United States Supreme Court holding that calls this reasoning into question.[7] Additionally, and to the extent it can be so considered, the Court of Criminal Appeals's determination that the charges on which LoPorto was ultimately tried were "based on the same facts as those set forth in the request for extradition" was

---

[7] The undersigned notes that the Court of Criminal Appeals "assume[d], without deciding, that [LoPorto] ha[d] standing to raise an alleged violation of the rule of specialty." (Doc. 10-7 at 3). A determination that LoPorto lacked such standing would also not have been contrary to, or have involved an unreasonable application of, clearly established federal law, as the United States Supreme Court has not held that a criminal defendant has such standing. *Cf. United States v. Puentes*, 50 F.3d 1567, 1572 & n.2 (11th Cir. 1995) ("The question of whether a criminal defendant has standing to assert a violation of the doctrine of specialty has split the federal circuit courts of appeals." (citing cases)).

not "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Accordingly, LoPorto's "rule of specialty" habeas claim is due to be denied on the merits,[8] and his habeas petition is due to be **DISMISSED with prejudice** to the extent it challenges his sex crimes criminal judgment.

---

[8]    To the extent LoPorto is arguing that he is due habeas relief based on defects in the extradition itself, that issue is raised far too late. *See Harden v. Pataki*, 320 F.3d 1289, 1299 (11th Cir. 2003) ("In the case of extradition, '[o]nce a fugitive has been brought within custody of the demanding state, legality of extradition is no longer proper subject of any legal attack by him.' *Siegel v. Edwards*, 566 F.2d 958, 960 (5th Cir. 1978) (per curiam) … 'Once the fugitive is returned to the demanding state, the right to challenge extradition becomes moot: the fugitive is no longer being detained by the asylum state, and so, the legality of his or her detention there is no longer at issue.' *Barton v. Norrod*, 106 F.3d 1289, 1298 (6th Cir. 1997). Thus, … federal habeas corpus is not available to a person extradited in violation of his or her federally protected rights, even where the extradition itself was illegal …" (footnote omitted)); *Ker v. Illinois*, 119 U.S. 436, 440-41 (1886) ("[F]or mere irregularities in the manner in which he may be brought into custody of the law, we do not think [a criminal defendant] is entitled to say that he should not be tried at all for the crime with which he is charged in a regular indictment … [W]hen the governor of one state voluntarily surrenders a fugitive from the justice of another state to answer for his alleged offenses, it is hardly a proper subject of inquiry on the trial of the case to examine into the details of the proceedings by which the demand was made by the one state, and the manner in which it was responded to by the other."); *Frisbie v. Collins*, 342 U.S. 519, 522 (1952) ("This Court has never departed from the rule … that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' ").

LoPorto has also claimed a number of errors in his criminal proceedings based on Alabama state law. However, errors of state law do not warrant federal habeas relief. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983) (per curiam) ("Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes…A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a

## C.    Certificate of Appealability

In actions such as this one brought under § 2254, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  "A certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' " *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)).  However, "a COA does not require a showing that the appeal will succeed."  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Where, as here, the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  *See also Miller-El*, 537 U.S. at 336 ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).  Where habeas relief is denied on procedural grounds without reaching the merits of the underlying

---

constitutional nature is involved."); *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 25 (11th Cir. 2012) (per curiam) (unpublished) ("To the extent that Sneed alleged a violation of Florida's speedy trial rules, that type of claim is not cognizable on federal habeas review because it only involves state procedural rules rather than errors of federal constitutional dimension.").

constitutional claim(s), "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted).

Upon consideration, the undersigned finds that LoPorto should be **DENIED** a Certificate of Appealability as to the present habeas petition. LoPorto has not made a substantial showing of the denial of a constitutional right, and he has presented no constitutional claim for which "reasonable jurists would find [this] court's assessment…debatable or wrong." *Slack*, 529 U.S. at 484. As to those claims dismissed on procedural grounds, the undersigned further finds that reasonable jurists would not find it debatable whether the Court was correct in those procedural rulings.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by the petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011); *Griffin v. DeRosa*, No.

3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).[9]

### D.    Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  28 U.S.C. § 1915(a)(3).  A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith.  It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit."  *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000).  That is,

> [a] party demonstrates good faith by seeking appellate review of any issue that is not frivolous when examined under an objective standard. *See Coppedge v. United States,* 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the legal theories are indisputably meritless." *Carroll v. Gross,* 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted). In other words, an IFP action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or fact." *Bilal v. Driver,* 251 F.3d 1346, 1349 (11th Cir. 2001). More specifically, "arguable means capable of being convincingly argued." *Sun v. Forrester,* 939 F.2d 924, 925 (11th

---

[9] Should the Court adopt this recommendation and deny a certificate of appealability, the petitioner "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

Cir. 1991) (internal quotations and citations omitted). Nevertheless, where a "claim is arguable, but ultimately will be unsuccessful," it should be allowed to proceed. *Cofield v. Ala. Pub. Serv. Comm'n,* 936 F.2d 512, 515 (11th Cir. 1991).

*Ghee v. Retailers Nat. Bank*, 271 F. App'x 858, 859-60 (11th Cir. 2008) (per curiam) (unpublished).

Considering the foregoing analysis, the undersigned **RECOMMENDS** the Court certify that any appeal by LoPorto in this action would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal *in forma pauperis*. [10]

## IV.    *Conclusion*

In accordance with the foregoing analysis, it is **RECOMMENDED** that LoPorto's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1) be **DISMISSED without prejudice** to the extent it challenges LoPorto's bail jumping criminal judgment and that it otherwise be **DISMISSED with prejudice,** that judgment be entered accordingly in favor of the Respondent, and that the Court find LoPorto is not entitled to either a Certificate of Appealability or to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.   Any party who objects to this recommendation or

---

[10] Should the Court adopt this recommendation and deny leave to appeal *in forma pauperis*, the petitioner may file a motion to proceed on appeal *in forma pauperis* with the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).

anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts; S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

     **DONE** this the 19th day of October 2017.

                            */s/ Katherine P. Nelson*
                            **KATHERINE P. NELSON**
                            **UNITED STATES MAGISTRATE JUDGE**